# ORIGINAL



FILED
DISTRICT COURT OF GUAM

DEC 1 1 2023 cme

@ 10:17 a.

JEANNE G. QUINATA
CLERK OF COURT

1 | SHAWN N. ANDERSON
United States Attorney
2 | Districts of Guam and the NMI
BENJAMIN K. PETERSBURG
3 | Assistant United States Attorney
Sirena Plaza, Suite 500
4 | 108 Hernan Cortez Avenue
Hagåtña, Guam 96910
5 | PHONE: (671) 472-7332
FAX: (671) 472-7215

6

Attorneys for the United States of America

7

## IN THE UNITED STATES DISTRICT COURT

8

## FOR THE DISTRICT OF GUAM

9

| UNITED STATES OF AMERICA, | |
|---|---|
| 10             Plaintiff, | CRIMINAL CASE NO. 23-00013 |
| 11 | |
|             vs. | |
| 12             SUNG PEEL HWANG a/k/a DON | **PLEA AGREEMENT** |
| 13             SUNGPEEL HWANG, | |
| 14             Defendant. | |

15      Plaintiff, United States of America, by and through Shawn N. Anderson, United States

16 Attorney for the Districts of Guam and the NMI, and Benjamin K. Petersburg, Assistant United

17 States Attorney for the Districts of Guam and the NMI, and Defendant Sung Peel Hwang a/k/a

18 Don Sungpeel Hwang, and the Defendant's counsel, Rawlen Mantanona, agree to the following

19 Plea Agreement:

20      1.    Guilty Plea and Maximum Statutory Penalties:

21      The Defendant, SUNG PEEL HWANG, agrees to plead guilty to Counts 15 and 17 of the

22 Indictment filed on April 19, 2023, charging the Defendant with Bank Fraud, in violation of 18

23 U.S.C. § 1344(1) and Money Laundering, in violation of 18 U.S.C. § 1957.

24      The Defendant, SUNG PEEL HWANG, understands that Bank Fraud is a Class B felony.

PLEA AGREEMENT - 1

The Defendant also understands that the maximum statutory penalty for Bank Fraud, in violation of 18 U.S.C. § 1344(1), is not more than 30 years imprisonment; a fine not to exceed $1,000,000; a term of supervised release of not more than 5 years; restitution; and a $100 special penalty assessment.

The Defendant, SUNG PEEL HWANG, further understands that Money Laundering is a Class C felony. The Defendant also understands that the maximum statutory penalty for Money Laundering, in violation of 18 U.S.C. § 1957, is not more than 10 years imprisonment; a fine not to exceed $250,000; a term of supervised release of not more than 3 years; restitution; and a $100 special penalty assessment.

The Defendant, SUNG PEEL HWANG, understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

2.    The Court's Role in Plea and Sentencing Procedure:

The Court is not a party to this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

The Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter. The Defendant understands that the Court is required to consider the applicable sentencing guideline range, but may depart upward or downward under the appropriate circumstances.

The Defendant also understands that should the sentencing judge decide not to accept any

PLEA AGREEMENT - 2

of the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement or a basis for withdrawing this plea of guilty.

The Defendant understands that the Court shall accept the Defendant's unconditional guilty plea as long as it meets the requirements of Fed. R. Crim. P. 11(b). The Court will therefore conduct a limited inquiry to determine whether the Defendant's plea is knowing, voluntary and intelligent, and has a sufficient factual basis.

3. Waiver of Constitutional Rights:

The Defendant, SUNG PEEL HWANG, understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

(a). The right to a jury trial;

(b). The right to see, hear and question the witnesses;

(c). The right to remain silent at trial;

(d). The right to testify at trial; and

(e). The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

4. Elements of the Offense:

The United States and the Defendant agree that in order to convict the Defendant of Bank Fraud, in violation of 18 U.S.C. § 1344(1), the United States would have to prove beyond a reasonable doubt the following elements:

(a). First, the Defendant, knowingly executed a scheme to defraud a financial

PLEA AGREEMENT - 3

institution of something of value;

    (b).    Second, that the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

    (c).    Third, the Defendant did so with the intent to defraud the financial institution; and

    (d).    Fourth, the financial institution was insured by the Federal Deposit Insurance Corporation.

Ninth Circuit Model Criminal Jury Instruction 15.36 (March 2023).

The United States and the Defendant agree that in order to convict the Defendant of Money Laundering, in violation of 18 U.S.C. § 1957, the United States would have to prove beyond a reasonable doubt the following elements:

    (a).    First, the Defendant knowingly engaged or attempted to engage in a monetary transaction;

    (b).    Second, the defendant knew the transaction involved criminally derived property;

    (c).    Third, the property had a value greater than $10,000;

    (d).    Fourth, the property was, in fact, derived from Bank Fraud as alleged in Count 15 of the Indictment; and

    (e).    Fifth, the transaction occurred in the United States.

Ninth Circuit Model Criminal Jury Instruction 18.7 (Sept. 2022).

5.    <u>Factual Basis and Statement of Facts</u>:

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and

these facts constitute an adequate factual basis for SUNG PEEL HWANG's guilty plea.

The Defendant was born in 1984 and is a citizen of the United States.

Beginning at least in September of 2015 and continuing until December 2018, Defendant Hwang was employed as an administrator in the Korean Air Lines (KAL) office at the Guam International Airport (GIAA). KAL operated commercial passenger flights between Guam and South Korea. All airlines operating out of GIAA are required to report the number of passengers on their flights and to pay a corresponding Passenger Facility Charge (PFC) to GIAA. As an administrator at the Guam KAL office, Hwang's duties included reporting the number of passengers and paying the corresponding PFC, procuring and paying for other office supplies and services, and acting as one of two co-signatories on KAL Guam's business checking account at the Bank of Guam. Defendant Hwang also had personal checking and savings accounts at the Bank of Guam. In May of 2017, Hwang changed the mailing address for his accounts and on his personal checks to KAL Guam's address at GIAA.

Beginning in at least September of 2015, Hwang began depositing KAL checks made out to pay PFC or other KAL Guam office expenses into his personal checking account. Hwang employed a number of methods in order to make the checks appear legitimate, including lining out the payee and adding his own name, initialing the change, and forging his co-signer's initials, misleading his co-signer into signing blank checks and then making them out to himself, and forging his co-signer's signature on checks that he made out to himself. During the course of the scheme, Defendant Hwang deposited over $3.5 million dollars in KAL funds into his personal checking account. In order to carry out the scheme and avoid detection, Defendant Hwang paid various office expenses and made partial payments towards the PFC due to GIAA using his personal checking account and checks that were printed with the KAL Guam office address. In order to carry out his scheme, Defendant Hwang reported the correct monthly PFC owed to GIAA

to the KAL corporate office in South Korea. Then the KAL corporate office wired that amount to the KAL Guam business checking account at Bank of Guam. Defendant Hwang would then make out a check from the KAL business account in that amount and deposit it into his personal checking account. Defendant Hwang would then generate another report for GIAA showing a smaller amount of monthly PFC due and issue a check from his personal checking account to GIAA in this smaller amount and keep the difference for himself. From October to December 2018, Defendant Hwang deposited fraudulent checks drawn on the KAL Guam business checking account into his personal checking account. These funds were intended for various KAL Guam office expenses, including PFC, and Hwang kept all of the funds for his personal use.

Specifically, on December 10, 2018, Defendant Hwang deposited two checks drawn on the KAL Guam business checking account into his personal checking account at Bank of Guam. These checks were intended for the KAL Guam office's monthly lease payment and the November 2018 PFC owed to GIAA. The checks totaled $61,178.07. The checks were made out to Defendant Hwang and included the forged signature of Hwang's co-signer and coworker identified here by initials T.W.K. By presenting the checks with the forged signature, Defendant Hwang represented to Bank of Guam that the checks and included signatures were legitimate. This misrepresentation was material to the bank's decision to honor the checks and Defendant Hwang made this misrepresentation with the intent to defraud Bank of Guam and obtain funds which were held by the bank and owned by Korean Air Lines. At all relevant times, Bank of Guam was insured by the Federal Deposit Insurance Corporation.

The following day on December 11, 2018, Defendant Hwang withdrew $59,000 in cash from his personal checking account at the Bank of Guam. Defendant Hwang knew that these funds were derived from Bank Fraud as charged in count 15 of the indictment, a crime which he had committed the previous day.

Defendant Hwang's manipulation of the PFC reporting to KAL's corporate office in South Korea and to GIAA, his modification of his mailing address on his personal bank account to match that of KAL Guam's office address, his payment or partial payment of KAL Guam office expenses and PFC from his personal checking account, and his forgery or manipulation of KAL Guam's business checks and his co-signer's initials and signatures were the means he used to effectuate his scheme. Defendant Hwang derived gross receipts of over $3.5 million from Bank of Guam as a result of his offense and his scheme caused an actual loss of $615,271.51 on the part of KAL after accounting for Hwang's payments and partial payments towards legitimate office expenses and PFC.

This statement of facts is made for the limited purpose of supporting the Defendant's guilty plea. It therefore does not contain all facts relating to the underlying criminal conduct. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

6. Waiver of Inadmissibility of Statements:

The Defendant agrees to waive the inadmissibility of statements made in the course of plea discussions with the United States, pursuant to Fed. R. Crim. P. 11(f). This waiver shall apply if the Defendant withdraws this guilty plea or breaches this Plea Agreement. The Defendant acknowledges that any statements made by the Defendant to law enforcement agents in the course of plea discussions in this case would be admissible against the Defendant in the United States' case-in-chief if the Defendant were to withdraw or breach this Plea Agreement.

7. The United States Agrees:

(a.) Dismissal(s):

At the time of sentencing, the United States agrees to move to dismiss Counts 1-14, which

charge the Defendant with Bank Fraud, in violation of 18 U.S.C. § 1344(1) and Count 16, which

charges the Defendant with Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A.

(b.)   Not to File Additional Charges:

The United States Attorney's Office for the Districts of Guam and the NMI agrees not to

bring any additional charges against the Defendant based upon information in its possession at the

time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity

charged in this Indictment unless the Defendant breaches this Plea Agreement any time before or

after sentencing.

8.   United States Sentencing Guideline Calculations:

The Defendant understands and acknowledges that the United States Sentencing

Guidelines (hereinafter "U.S.S.G.") are applicable to this case and that the Court will determine

the Defendant's applicable sentencing guideline range at the time of sentencing.  In determining a

sentence, the Court is obligated to consider that range, possible departures or variances under the

Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a).

Bank Fraud

(a.)   Base Offense Level:

The United States and the Defendant agree that the base offense level for Bank Fraud is 7.

See U.S.S.G. §2B1.1(a)(1).

The United States and the Defendant agree and stipulate that the loss amount in connection

with Defendant's Bank Fraud scheme was $615,271.51; and the Defendant's relevant conduct for

sentencing purposes should be calculated based upon this amount, pursuant to U.S.S.G. §1B1.3.

(b.)   Specific Offense Characteristics:

The United States and the Defendant also agree and stipulate that the base offense is

increased by an additional fourteen (14) levels because the loss amount is greater than $550,000

PLEA AGREEMENT - 8

but less than $1,500,000.00. See U.S.S.G. §2B1.1(b)(1)(H).

The United States asserts that the base offense level should be increased by an additional two (2) levels because the offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means. See U.S.S.G. §2B1.1(b)(10)(C). The defendant is free to argue the applicability of this provision at sentencing.

The United States and the Defendant also agree and stipulate that the base offense level should be increased by an additional two (2) levels because the Defendant derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense. See U.S.S.G. §2B1.1(b)(17)(A).

(c.)   Role in the Offense:

The United States asserts that the Defendant abused of a position of private trust in a manner that significantly facilitated the commission or concealment of the offense and that the Defendant's base offense level should be increased by two (2) levels. See U.S.S.G. §3B1.2. The defendant is free to argue the applicability of this provision at sentencing.

Money Laundering

(d.)   Base Offense Level

The United States and the Defendant agree and stipulate that the base offense level for Money Laundering is the offense level for the underlying offense. The United States therefore asserts that the base offense level is 25. See U.S.S.G. §2S1.1(a)(1).

(e.)   Specific Offense Characteristics

The United States asserts that the base offense level for Money Laundering is increased by one (1) level because the offense of conviction is 18 U.S.C. § 1957. See U.S.S.G. §2S1.1(b)(2)(A).

(f.)   Multiple Count Analysis:

The position of the United States is that, pursuant to U.S.S.G. §3D1.1, one (1) unit is

PLEA AGREEMENT - 9

assigned to for each of the counts of conviction resulting in a 2-level increase to the count with the highest offense level; all resulting in a combined adjusted offense level of 29.

(g.)    Acceptance of Responsibility:

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than October 27, 2023, the United States will move for a three (3) level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a) and (b).

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a three (3) level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

Furthermore, the Defendant agrees to pay the $200 mandatory special penalty assessment to the Clerk of Court for the District of Guam, at or before sentencing, and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment, as a condition to this recommendation by the United States.

Therefore, the position of the United States is that the Defendant's final adjusted offense level would be 26.

(h.)    Criminal History:

The United States and the Defendant understand that the Defendant's criminal history computation is tentative and that ultimately the Defendant's criminal history category will be determined by the Court after review of the Presentence Investigative Report. The United States

PLEA AGREEMENT - 10

and the Defendant have made no agreement and make no representations as to the criminal history category, which shall be determined after the Presentence Investigative Report is completed.

9. Departures:

The Defendant and the United States understand and acknowledge that, at sentencing, they are free to make whatever sentencing recommendations for whatever reasons they deem are appropriate. That is, the United States and the Defendant are free to seek an upward or a downward departure from the applicable sentencing guideline range.

10. Incarceration:

(a.) Length of Imprisonment:

The United States and the Defendant agree to recommend that the Court impose a sentence at the low end of the applicable sentencing guideline range.

11. Criminal Fine:

The United States and the Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

12. Supervised Release:

The United States and the Defendant agree to recommend that the Court impose a 3-year term of supervised release to include the following special conditions, in addition to the standard conditions of supervised release: (1) that the Defendant provide financial information, provide copies of Federal income tax returns and allow credit checks, at the direction of the Probation Officer; (2) that the Defendant shall disclose all assets and liabilities to the Probation Officer and shall not transfer, sell, give away, or otherwise convey or secret any asset, without the advance approval of the Probation Officer; (3) that the Defendant be prohibited from incurring any new debt, opening new lines of credit, or enter any financial contracts or obligations without the prior approval of the Probation Officer; and (4) that the Defendant participate and complete financial

counseling and life skills programs at the direction of the Probation Officer;

13. <u>Restitution</u>:

     The United States and the Defendant hereby stipulate and agree that, pursuant to 18 U.S.C. §§ 3663, 3663A and 3664, the Court should order restitution to KAL in the amount of $615,271.51.

14. <u>Mandatory Special Penalty Assessment</u>:

     The Defendant agrees to pay the $200 mandatory special penalty assessment to the Clerk of Court for the District of Guam, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

15. <u>Payments While Incarcerated</u>:

     If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16. <u>Financial Disclosure Obligations</u>:

     Defendant agrees to submit to the United States Attorney's Office for the Districts of Guam and the NMI, within three weeks of the execution of this plea agreement, a complete, accurate and truthful financial statement and accompanying releases, in a form it provides and as it directs. Defendant agrees to disclose all assets in which he has any interest or over which he exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. Defendant authorizes the United States Attorney's Office for the Districts of Guam and the NMI to obtain a credit report on him to evaluate his ability to satisfy any financial obligation imposed by the Court.

     Defendant understands and agrees that any monetary penalties imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States, pursuant to 18 U.S.C. § 3613. Defendant understands that, by law, interest accrues on any

PLEA AGREEMENT - 12

remaining balance of the debt. Defendant agrees not to dissipate assets. If Defendant is financially

unable to immediately pay any monetary penalties in full, Defendant agrees: (a) to cooperate with

the United States Attorney's Office; (b) to provide updated financial statements upon request by

the United States Attorney's Office and to keep the office advised about Defendant's current

address; and (c) for his debt to be placed on the Treasury Offset Program and any tax refund/rebate

offset program existing in his state of residency. Defendant understands that any funds captured

by an offset program will be paid towards his monetary penalties, but does not relieve him of his

obligation to pay the monetary penalties in full.

17. Additional Violations of Law Can Void Plea Agreement:

The Defendant and the United States agree that the United States may at its option and

upon written notice to the Defendant, withdraw from this Plea Agreement or modify its

recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or

convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled

substance.

18. Appeal Rights:

Defendant understands that he has a limited right to appeal or challenge the conviction and

sentence imposed by the Court. Defendant hereby expressly waives his right to appeal his

conviction. Defendant further expressly waives his right to file any post-conviction motion

attacking his conviction, including a motion pursuant to 28 U.S.C. § 2255, except one based upon

ineffective assistance of counsel based on information not now known by Defendant and which,

in the exercise of due diligence, could not be known by Defendant by the time the Court imposes

the sentence.

19. Hyde Amendment Waiver:

The Defendant waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A

(Statutory Note), for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

20. Integration Clause:

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Districts of Guam and the NMI, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Districts of Guam and the NMI.

Shawn N. Anderson
United States Attorney

_____
Benjamin K. Petersburg
Assistant U.S. Attorney

11/3/2023
Date

//

//

//

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement.

PLEA AGREEMENT - 14

Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____
SUNG PEEL HWANG
Defendant

_10_/_20_/_2023_
Date

    I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_____
Rawlen Mantanona
Attorney for the Defendant

_____
Date

PLEA AGREEMENT - 15

Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____
SUNG PEEL HWANG
Defendant

Date: 10 / 20 / 2023

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_____
Rawlen Mantanona
Attorney for the Defendant

Date: 10/25/23

PLEA AGREEMENT - 15