SHAWN ANDERSON
United States Attorney
BENJAMIN K. PETERSBURG
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagåtña, Guam 96910-5009
PHONE: (671) 479-4146
FAX: (671) 472-7215
Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> SUNG PEEL HWANG a/k/a DON SUNGPEEL HWANG, <br><br> Defendant. | CRIMINAL CASE NO. 23-00013 <br><br> **UNITED STATES' REPLY TO DEFENDANT'S OBJECTIONS TO DRAFT PRESENTENCE INVESTIGATION REPORT** |

COMES NOW, the United States of America, by and through the undersigned counsel, and submits this reply to Defendant's Response to Draft Presentence Investigation Report ("PSR")(ECF No. 29). Defendant objects to three specific factual issues and to two sentencing enhancements pursuant to the sentencing guidelines. Defendant has not otherwise objected to the factual findings in the PSR or the other applications of the sentencing guidelines.

I. Factual Issues

The Government has no objection to the Defendant's requested changes to paragraphs 13, 72, and 90. In the discovery, Mr. Hwang is referred to as both an office manager (See SPH_000208) and as an administrator (See SPH_000148; SPH_001155). Ultimately what is more important for purposes of the guidelines calculations are Mr. Hwang's duties and

responsibilities while he was employed with Korean Airlines, as will be discussed below.

## II. Sentencing Enhancements

Defendant Hwang objects to the application of two enhancements under the guidelines: the "sophisticated means" enhancement found at U.S.S.G. § 2B1.1(b)(10)(C) and the "abuse of position of private trust" enhancement found at U.S.S.G. § 3B1.3.

### A. Sophisticated Means Enhancement Applies to Hwang's Conduct

U.S.S.G. § 2B1.1(b)(10)(C) provides that "if…the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means, increase by 2 levels." The application notes state that:

> "For purposes of subsection (b)(10)(C), "sophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means."

Application Note 9, U.S.S.G. 2B1.1. In other words, "[t]his enhancement applies when the criminal scheme is extensively planned and is more sophisticated than a routine offense." *United States v. Lindsey*, 680 F. App'x 563, 567 (9th Cir. 2017). However, "conduct need not involve highly complex schemes or exhibit exceptional brilliance to justify a sophisticated means enhancement," *United States v. Jennings*, 711 F.3d 1144, 1145 (9th Cir. 2013), and "the enhancement properly applies to conduct less sophisticated than the list articulated in the application note." *Id.* at 1147.

Here, while Mr. Hwang downplays his offense conduct describing it as merely depositing Korean Airlines funds into his personal bank account, the uncontested facts in the PSR and agreed to in Mr. Hwang's plea agreement tell a different story. In fact, Mr. Hwang's fraudulent

scheme was much more complex, and the deposit of KAL funds into his personal bank account was simply one step in the scheme. As part of the scheme Hwang, amongst other things: 1) Transmitted monthly Passenger Facility Charge (PFC) information to KAL's main offices in South Korea causing KAL to wire an appropriate sum of money to KAL Guam's Bank of Guam checking account; 2) created and transmitted false PFC reports to the Guam International Airport showing smaller passenger numbers and thus requiring payment of a smaller amount of PFC; 3) altered or issued KAL checks causing them to be made payable to himself; 4) forged his co-signer's signature and deposited the checks into his own personal bank account; 5) changed the address on his personal bank account to be identical to the KAL Guam address; 6) paid the falsely deflated PFC amount to GIAA from his personal bank account; 7) deposited other checks intended to be used for KAL Guam office expenses into his personal account; 8) paid some KAL Guam office expenses from his personal account. See PSR ¶¶ 12-22 and Amended Plea Agreement, pages 5-7 (ECF 25).

Courts in the Ninth Circuit have routinely upheld the application of this enhancement in similar circumstances. *See, e.g. United States v. Tanke*, 743 F.3d 1296, 1307 (9th Cir. 2014)(upholding enhancement where defendant embezzled money for his own use, faked invoices to mask payments made to himself, and forged signatures in order to issue checks to himself); *United States v. Jennings*, 711 F.3d 1144, 1145 (9th Cir. 203)(using a bank account with deceptive name to try and conceal fraud proceeds); *United States v. Horob*, 735 F.3d 866, 872 (9th Cir. 2013)(upholding enhancement where defendant use falsified documents and "complicated and fabricated paper trial made discovery of his fraud difficult"); *United States v. Tillsy*, 697 F.App'x. 910, 914 (9th Cir. 2017)(upholding enhancement where defendant "carefully planned schemes and coordinated conduct, including his acts to conceal the fraud"); *United*

*States v. Thomsen*, 830 F.3d 1049, 1073 (9th Cir. 2016)(upholding enhancement where defendant used "coordinated and repetitive steps to effect his fraudulent scheme…including falsifying tax returns and checks…using a bank account with a deceptive name to conceal income"); *United States v. Hardat*, 829 F. App'x 761, 762 (9th Cir. 2020)(upholding enhancement where defendant altered financial documents and "made 'lulling' partial payments…intended to conceal his actions"). Here, under Ninth Circuit precedent there can be no question that Defendant Hwang intentionally engaged in conduct that amounts to sophisticated means. Accordingly, the enhancement at U.S.S.G. § 2B1.1(b)(10)(C) properly applies.

### B. Abuse of Position of Private Trust

U.S.S.G. § 3B1.3 provides that: "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase [the base offense level] by 2 levels." The application notes provide some guidance stating:

> "Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (<u>i.e.</u>, substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (<u>e.g.</u>, by making the detection of the offense or the defendant's responsibility for the offense more difficult).

Application Note 1, U.S.S.G. § 3B1.3. The application notes also make this enhancement mandatory in any scenario where a "defendant…exceeds or abuses the authority of his or her position in order to obtain, transfer, or issue unlawfully, or use without authority, any means of identification" as defined by 18 U.S.C. § 1028(d)(7). See Application Note 2(B), U.S.S.G. §

3B1.3.

Here, Hwang's managers informed federal investigators that Hwang handled financial matters for KAL in Guam and acted with a fiduciary duty. See SPH_000214. Hwang was an authorized signer on the KAL business checking account, had authority to issue KAL checks and to conduct wire transfers, was responsible for tracking and paying various office expenses, was responsible for collecting and reporting PFC data to KAL and for creating reports and making payments to GIAA, amongst other duties. *Id.* See also PSR ¶¶ 12-22. As part of Hwang's offense conduct, he used the means of identification of his co-signers on the KAL bank account without authority when he forged their signatures on KAL checks made out to himself. See PSR ¶ 21; Amended Plea Agreement, pages 6-7.

Here, "forging another's signature constitutes the use of that person's name and thus qualifies as a 'means of identification'" within the meaning of 18 U.S.C. § 1028(d)(7). *United States v. Blixt*, 548 F.3d 882, 886 (9th Cir. 2008). Hwang's admitted actions in "misleading his co-signer into signing blank checks and then making them out to himself," and then presenting the fraudulent checks to the bank in order to deposit them into his own bank account would also constitute the unlawful use or use without authority of the means of identification of another person. See Amended Plea Agreement, page 5 (ECF 25). Moreover, application of the enhancement is further supported by the considerable discretion granted to Hwang in the exercise of his duties. He was entrusted as a co-signer on the KAL business checking account, entrusted to write checks and conduct wire transfers, entrusted to prepare true and correct financial reports, and entrusted to make appropriate payments for office rent, supplies, regulatory fees, and other business expenses. It was precisely this discretion and trust which Hwang abused and which allowed him to get away with his scheme for so long. Courts in the Ninth Circuit

"have repeatedly held that, to support the abuse of trust enhancement, a position of trust must be established from the perspective of the victim." *United States v. Thomsen*, 830 F.3d 1049, 1073 (9th Cir. 2016)(citations and internal quotation marks omitted). Under these circumstances, KAL and its management placed significant trust in Hwang to perform his duties honestly and Hwang took advantage of that trust in order to facilitate and conceal his fraudulent scheme. Under these circumstances, the enhancement was properly applied.

III. Conclusion

Here, the undisputed facts in the PSR and the Amended Plea agreement support the application of the enhancements found at U.S.S.G. § 2B1.1(b)(10)(C) and § 3B1.3. Accordingly, Defendant Hwang's objections should be overruled and the guidelines calculations found in the Draft PSR should be maintained in the Final PSR.

RESPECTFULLY SUBMITTED this 23rd day of February, 2024.

    SHAWN N. ANDERSON
    United States Attorney
    Districts of Guam and the NMI

By: /s/ Benjamin K. Petersburg
    BENJAMIN K. PETERSBURG
    Assistant U.S. Attorney